CARRIE L. McCORMICK, as Administratrix, etc., of JOHN J. McCORMICK, Deceased, Respondent, *v.* NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Appellant.

Third Department, July 1, 1918.

**Railroads — negligence — action for death of person found between rails near street crossing — evidence.**

In an action against a railway company for negligence it appeared that the plaintiff's decedent was found at about two o'clock A. M., lying between the rails of the most westerly of three railway tracks which run north and south at about thirty feet south from a street crossing; that shortly before he was discovered an engine backed down from the north on the westerly track, shoving freight cars behind it which were kicked over the crossing at the rate of six or eight miles an hour; that arc lights hung near the tracks on each side of the crossing and were lighted at the time; that an automatic bell was ringing upon the engine which came within a short distance of the crossing; that a trainman was standing at the end of the most advanced car to watch and warn. It was not shown whether or not the deceased was a pedestrian attempting to

cross the track. He had not been seen for two hours prior to the accident. *Held*, that there was a failure to establish negligence of the defendant, and that the complaint should be dismissed.

JOHN M. KELLOGG, P. J., and WOODWARD, J., dissented.

APPEAL by the defendant, New York, Ontario and Western Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Sullivan on the 19th day of September, 1917, upon the verdict of a jury for $2,000.

*Carpenter & Rosch* [*Ward De Silva* and *Joseph Rosch* of counsel], for the appellant.

*Ellsworth Baker*, for the respondent.

H. T. KELLOGG, J.:

The deceased was found, at about two o'clock at night, lying between the rails of the most westerly of three railway tracks, which ran north and south, at a point thirty feet south from a street crossing. He had received fatal injuries from which he soon after died. Shortly before he was discovered an engine backed down from the north on the westerly track, shoving five freight cars behind it. The engine was detached and the cars were kicked over the crossing at the rate of six or eight miles an hour. Arc lights hung near the tracks on each side of the crossing and were lighted at the time. An automatic bell was ringing upon the engine which came within a short distance of the crossing. A trainman, called by the plaintiff, told that he was standing at the brake at the end of the most advanced car; that his lighted lantern was on the floor of the car within two feet of the end thereof; that he was looking at the crossing facing towards it; that it was sufficiently light to see approaching objects; and that he saw no one in front of him upon the track or near it. This testimony was disputed, if at all, by a servant girl who was lying in bed in her room in a neighboring house. She testified that she heard an engine and cars moving down towards the crossing; that looking from her bed through the open window she saw no light upon the cars. She finally admitted that from her window she could not see the crossing. Her mistress testified positively that there was no view of

the crossing from the window beside which the girl slept. There was, therefore, no proof that as the cars approached the crossing a light was not exposed upon the end car. Since the speed of the cars was slow, since a bell was at all times ringing, since a light was on the end of the end car, since a trainman was posted there to watch and warn, it is difficult to see wherein a charge of negligence was made out. Moreover, it is not known whether the deceased was a pedestrian who was attempting to cross the track or not. No one saw him attempt to cross or saw him fall. In fact for two hours prior to the accident he was not seen. He may have been struck while walking along the tracks north of the crossing, and been thrown or dragged to the point in the center thereof where marks of blood began to show. He may have been lying sick, asleep or intoxicated beside the track. He may have walked directly into the side of a passing car. In none of these cases would any further signals at the crossing have saved him. As we have no knowledge of the presence of the deceased upon the track before the train passed, or in what character or manner he appeared there, we do not know what duty, if any, was owed to him, how any duty to him was violated, or in what way a violation of duty entered in as a cause of death. Moreover, if we assume that he was crossing the track when struck, then contributory negligence on his part must clearly be inferred. He could not have used his eyes and failed to see the train. He could not have listened and failed to hear it. Nothing obstructed his view. No other sound could have drowned out the noise of its approach. The servant girl in the distant house, lying in bed in her room, distinctly heard it rumbling towards the crossing. To him, seeking to cross the very rails upon which it traveled, the sound must have been more distinct. As it traveled slowly he should have heard in time. For all these reasons the complaint should have been dismissed.

The judgment should be reversed and the complaint dismissed.

All concurred, except John M. Kellogg, P. J., and Woodward, J., dissenting.

Judgment reversed and complaint dismissed, with costs.